UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MELVIN JEROME DAY,

        Petitioner,

v.                            Case No. 3:15-cv-698-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

## ORDER

### I. Status

        Petitioner Melvin Day, an inmate of the Florida penal system, initiated this action on June 9, 2015,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Day is proceeding on an amended petition filed on July 14, 2015 (Amended Petition; Doc. 10). In the Amended Petition, Day challenges a 1999 state court (Clay County, Florida) judgment of conviction for armed robbery. Day raises five grounds for relief. See Amended Petition at 5-10.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response;

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Doc. 19) with exhibits (Resp. Ex.). Day declined to file a reply brief; instead, deciding to rely on his allegations and arguments as raised in his Amended Petition. See Doc. 22. This case is ripe for review.

## II. Relevant Procedural History

On July 28, 1999, the State of Florida (State) charged Day by way of an amended Information with one count of armed robbery. Resp. Ex. A at 8. Day proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged, with a specific finding that he used a firearm during the commission of the offense. Id. at 74. On January 13, 2000, the circuit court adjudicated Day as a habitual violent felony offender (HVFO) and sentenced him to a term of incarceration of thirty years in prison, with a fifteen-year minimum mandatory as a HVFO and a three-year minimum mandatory for his use of a firearm during the commission of the crime. Id. at 132,137-38.

Day appealed his conviction and sentence to Florida's First District Court of Appeal (First DCA). Id. at 149. Day, with the assistance of counsel, raised one issue on appeal:  whether the circuit court erred in sentencing Day as a HVFO. Resp. Ex. D. The State filed an answer brief, Reps. Ex. E, and Day filed a brief in reply. Resp. Ex. F. On January 18, 2001, the First DCA per curiam affirmed Day's conviction and sentence without a written opinion. Resp. Ex. G. The First DCA issued its Mandate on February 5, 2001. Resp. Ex. H.

On February 18, 2000, Day filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he alleged his HVFO sentence was illegal. Resp. Ex. I. On February 29, 2000, the circuit court dismissed the motion for lack of jurisdiction due to Day's pending direct appeal. Resp. Ex. J. On November 9, 2000, the First DCA per curiam affirmed the dismissal with a written opinion, Resp. Ex. K, and issued its Mandate on December 5, 2000. Resp. Ex. L.

On August 13, 2001, Day filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. M at 7-29. In his Rule 3.850 Motion, Day argued that his counsel was ineffective for: (1) misadvising him to reject a favorable plea offer; (2) failing to call a witness; (3) failing to impeach two witnesses; (4) opening the door to evidence that was otherwise excluded pursuant to a pretrial motion in limine; (5) referring to Day as the unidentified robber, and failing to object when the prosecutor and a witness made the same characterization; and (6) his cumulative errors. Id. Following an evidentiary hearing, the circuit court denied the motion. Resp. Ex. O. On January 10, 2005, the First DCA affirmed the circuit court's denial without a written opinion. Resp. Ex. U. Day filed a motion for rehearing, Resp. Ex. V, which the First DCA denied on February 18, 2005. Resp. Ex. W. The First DCA issued its mandate on March 8, 2005. Resp. Ex. X.

On May 19, 2003, Day filed a second pro se motion to correct illegal sentence pursuant to Rule 3.800(a) (Second Rule 3.800(a) Motion), arguing that his HVFO adjudication was illegal because one of the prior convictions the State relied on did not qualify as a prior conviction for purposes of the HVFO statute. Resp. Ex. P. In an order filed July 24, 2003, the circuit court denied the motion. Resp. Ex. O. Day did not appeal. Resp. Ex. AA.

On October 8, 2008, Day filed another pro se motion to correct illegal sentence pursuant to Rule 3.800(a) (Third Rule 3.800(a) Motion), in which he again attacked his HVFO adjudication based on the State's reliance on a conviction that did not qualify as a previous conviction for purposes of the HVFO statute. Resp. Ex. Y. The circuit court denied the motion on March 9, 2010. Resp. Ex. Z.  Again, Day did not appeal. Resp. Ex. AA.

On October 28, 2011, Day, with the assistance of counsel, filed a motion to correct illegal sentence and petition for writ of habeas corpus (Fourth Rule 3.800(a) Motion). Resp. Ex. BB at 1-57. In the motion, Day argued that the circuit court relied on an older version of the HVFO statute that allowed for the imposition of a HVFO sentence if a defendant was on parole within five years from the commission of the instant offense. Id. The Florida legislature amended the statute to eliminate the probation or parole provision of the law prior to the date Day committed the armed robbery. Id. Thus, Day contended that the circuit court's reliance on an Alabama conviction for which Day was

released from prison more than five years before the commission of the instant offense, even though he was on parole within the five-year period, was improper and resulted in an illegal sentence. Id. Following an evidentiary hearing, the circuit court granted Day's Fourth Rule 3.800(a) Motion, finding Day did not qualify as a HVFO and ordered a new sentencing proceeding. Id. at 127-31. Ultimately, the circuit court resentenced Day to a term of imprisonment of thirty years, with a three-year minimum mandatory. Id. at 188-89.

Day appealed the imposition of his new sentence to the First DCA. Id. at 197. Day's appellate counsel filed an Anders[3] brief. Resp. Ex. DD. After the filing of appellate counsel's Anders brief, but prior to Day's filing his own pro se initial brief, Day filed with the circuit court a motion to correct a sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (Rule 3.800(b)(2) Motion). Resp. Ex. EE. In the motion, Day alleged that (1) his sentence was illegal because a successor judge sentenced him rather than the original trial judge; (2) the circuit court violated his due process rights by not allowing him to address the circuit court; (3) the circuit court considered erroneous information during the resentencing hearing; and (4) the circuit court did not understand it had the discretion to impose a sentence of less than

_____

[3] Anders v. State of California, 386 U.S. 738 (1967).

thirty years. <u>Id.</u> at 2-10. The circuit court denied the Rule 3.800(b)(2) Motion. <u>Id.</u> at 13-15. Thereafter, Day filed his pro se initial brief, arguing that the circuit court abused its discretion in sentencing him. Resp. Ex. FF. On March 10, 2014, the First DCA per curiam affirmed Day's sentence without a written opinion, Resp. Ex. GG, and issued its mandate on April 7, 2014. Resp. Ex. HH.

On June 6, 2014, Day filed a motion to mitigate sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). Resp. Ex. II. The circuit court denied the motion on June 19, 2014. Resp. Ex. JJ.

On June 9, 2015, Day filed his initial Petition with this Court. <u>See</u> Petition. Following Day's notice of voluntary dismissal, Doc. 7, the Court dismissed the Petition without prejudice. Doc. 8. On July 14, 2015, Day filed an amended federal habeas petition, but it was given a new case number, 15-cv-882. <u>See</u> Doc. 1 in case number 15-cv-882. Respondents filed a motion to dismiss the amended petition as untimely. <u>See</u> Doc. 12 in case number 15-cv-882. Day filed a reply brief. <u>See</u> Doc. 13 in case number 15-cv-882. On April 6, 2018, the Court denied Respondents' motion to dismiss, reopened case number 15-cv-698 (the instant case), and afforded Day the right to pursue his claims in this case. <u>See</u> Doc. 14 in case number 15-cv-882.

On October 20, 2015, Day filed another Rule 3.850 Motion (Second Rule 3.850 Motion) in state court, in which he alleged his counsel was ineffective for: (1) failing to object to a successor judge sentencing Day and advising Day

of the law in relation to the facts of his case; (2) failing to object to the State's

misstatement of the law; (3) misadvising the circuit court on the law in relation

to his case; and (4) failing to object to scoresheet errors. Resp. Ex. KK. On May

4, 2016, the circuit court denied Day's Second Rule 3.850 Motion. Resp. Ex.

NN. Day did not appeal. Resp. Ex. AA.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period.

See 28 U.S.C. § 2244(d). However, Respondents challenge the timeliness of

Ground Five of the Amended Petition. Response at 11. The Court will address

the timeliness of that ground below.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to

establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla.

Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

grant an evidentiary hearing, a federal court must consider whether such a

hearing could enable an applicant to prove the petition's factual allegations,

which, if true, would entitle the applicant to federal habeas relief." Schriro v.

Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834

F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It

follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary

hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Day's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance.'"[4] <u>Titlow</u>, 571 U.S. at
---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.

Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited

to the record that was before the state court that adjudicated the claim on the

merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language

in § 2254(d)(1)'s "requires an examination of the state-court decision at the

time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Day alleges that the circuit court denied him due process of law when it did not afford him a de novo resentencing hearing. Amended Petition at 5. According to Day, "at resentencing, a successor judge simply conformed to the original judge's findings and reimposed his 30 year sentence." <u>Id.</u> Day contends the successor judge's actions denied him of an independent hearing in front of a neutral judge because the "successor judge, at the urging of the State, impermissibly abdicated his responsibility by simply conforming his sentence to the original judge's previous findings." <u>Id.</u>

Day raised a similar argument in his Rule 3.800(b)(2) Motion. Resp. Ex. EE at 8-10. The circuit court denied all the claims with in that motion with the following explanation:

> Being familiar with the case and having reviewed the entire court file and the evidence presented at resentencing proceedings; heard the testimony of witnesses and the argument of counsel; considered applicable rules, statutes, and case law; and having been otherwise fully advised, the Court finds Defendant's arguments unmeritorious and unpersuasive. Defendant was rightly resentenced by the Honorable Don H. Lester to a legal sentence, which

18

> was appropriately based on the evidence, testimony, and record before the Court, as well as applicable Florida law.

Id. at 13-14. The First DCA per curiam affirmed Day's sentence without issuing a written opinion. Resp. Exs. GG; HH.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Day is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of the claim is not entitled to deference, the record refutes the claim in Ground One. Under Florida law, "resentencing entitles the defendant to a de novo sentencing hearing with the full array of due process rights." Trotter v. State, 825 So. 2d 362, 367-68 (Fla. 2002). The de novo nature of resentencing requires the State to produce evidence on sentencing issues even if it had done so at the original sentencing

---

[8] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

hearing. State v. Collins, 985 So. 2d 985, 989 (Fla. 2008) (citations omitted). Likewise, a trial court "is not limited by the evidence originally presented." Id.

Here, the circuit court held a resentencing hearing on January 29, 2013. Resp. Ex. BB at 226-49. At the hearing, the circuit court noted the prior judge had improperly imposed a HVFO sentence and discussed with the parties an amended scoresheet that resulted in the calculation of a lower minimum sentence. Id. at 229-31. The circuit court also took into consideration a presentence investigation report. Id. at 230, 242, 245. Day's counsel was afforded the opportunity to present evidence and argument. Id. at 231. Counsel presented fifteen letters Day's friends and family wrote in support of him, which the circuit court read. Id. at 232. The circuit court heard live testimony from Day's wife and a friend, id. at 233-36, and was made aware of Day's prior convictions and the details of the instant case. Id. at 236-41. Defense counsel also detailed Day's behavior in prison and the courses he took while there to better himself. Id. at 241-42. The circuit court also afforded the State an opportunity to present evidence and argument, and the State provided the circuit court with a transcript of the original sentencing hearing. Id. at 244-46.

Prior to imposing sentence, the circuit court stated the following:

> All right. Before I announce the sentence, Mr. Day, I have reviewed the presentence investigation report, I've reviewed all of the letters that your counsel provided to me, and I've reviewed the defendant's sentencing hearing.

Ms. Marshall, as usual, you have eloquently advocated on behalf of your client, particularly with respect to the facts and circumstances of the trial. However, legally, I do not believe that residual doubt can form the basis for my ruling or my sentence. Judge Wilkes is the one who sat through the trial, he's the one who observed the demeanor and the facts of the case. It's clear that he took a number of circumstances into account in determining the appropriate sentence. Clearly he could have imposed life and did not. But Judge Wilkes was concerned, <u>as am I</u>, regarding the two previous armed robberies, including the fact that one of them was committed while he was on probation for a previous robbery, <u>which is a very significant and serious concern to me</u>.

Therefore, <u>I can't say that I can see anything in the record that I have so far or arguments I've heard from counsel to suggest that Judge Wilkes' previous 30 year sentence was inappropriate and I'm not in a position to disagree with him on that</u>.

So today I'm going to, pursuant to the jury verdict, I'm going to adjudicate you guilty of this charge, order that you serve 30 years Florida State Prison, credit for the nunc pro tunc to January 13th, 2000. Credit for 197 days. That also has a three-year mandatory minimum, pursuant to the jury finding that you used a firearm in the commission of a felony.

<u>Id.</u> at 246-47 (emphasis added). Based on the circuit court's statements, the Court finds that the circuit court did conduct a de novo sentencing review, as it received and considered the evidence presented. The fact the circuit court agreed with the original sentencing judge's sentence does not render the sentence improper or result in a violation of Day's federal due process rights.

The circuit court's explanation describes how its review of the relevant evidence led it to conclude that a thirty-year sentence was appropriate. Accordingly, as the record refutes this claim, Day is not entitled to the relief he seeks in Ground One and this claim is due to be denied.

## B. Ground Two

In Ground Two, Day avers that the circuit court denied him due process when a successor judge resentenced him rather than the original sentencing judge. Amended Petition at 10. While acknowledging the original judge was "semi-retired," Day contends he was still serving as a judge in a limited capacity. Id. According to Day, "the State did not make a prima facie showing of necessity that petitioner be resentenced by a successor judge." Id.

Day raised a similar claim in his Rule 3.800(b)(2) Motion, Resp. Ex. EE at 2-4. In denying relief on this and other claims raised in his Rule 3.800(b)(2) Motion, the circuit court explained:

> Being familiar with the case and having reviewed the entire court file and the evidence presented at resentencing proceedings; heard the testimony of witnesses and the argument of counsel; considered applicable rules, statutes, and case law; and having been otherwise fully advised, the Court finds Defendant's arguments unmeritorious and unpersuasive. Defendant was rightly resentenced by the Honorable Don H. Lester to a legal sentence, which was appropriately based on the evidence, testimony, and record before the Court, as well as applicable Florida law.

Id. at 13-14. The circuit court included a footnote that stated "[t]he Honorable William Wilkes retired on December 31, 2010, prior to Defendant's resentencing. Therefore, sentencing before a successor judge was necessary. Fla. R. Crim. P. 3.700(c)(1)." Day again raised this issue in his pro se initial brief. Resp. Ex. FF at 3-4. The First DCA per curiam affirmed Day's sentence without a written opinion. Resp. Exs. GG; HH.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Day is not entitled to relief on the basis of this claim.

Even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. Florida Rule of Criminal Procedure 3.700(c) provides:

> In any case, other than a capital case, in which it is necessary that sentence be pronounced by a judge other than the judge who presided at trial or accepted the plea, the sentencing judge shall not pass sentence until the judge becomes acquainted with what

> transpired at the trial, or the facts, including any plea
> discussions, concerning the plea and the offense.

Fla. R. Crim. P. 3.700(c)(1). It was necessary for a successor judge to preside over Day's resentencing for two reasons. First, because Day successfully moved to have Judge Wilkes recused. Resp. Ex. M at 1-3, 100-01. Judge Wilkes found Day's motion to disqualify legally sufficient and recused "himself from any further proceedings in this cause." Id. at 100. As such, Judge Wilkes was prohibited from presiding over Day's resentencing. See Miller v. Bell South Phone Co., 860 So. 2d 523, 523 (Fla. 1st DCA 2003) ("Florida law is clear that once a judge recuses himself or herself for whatever reasons, the judge may not thereafter reconsider the recusal decision and reassert judicial authority over the case."). Second, as the circuit court noted, Judge Wilkes had retired prior to the resentencing, making it necessary for a successor judge to preside. See Caldwell v. State, 72 So. 3d 779, 779 n.1 (Fla. 2d DCA 2011) (remanding for new sentencing hearing and noting that "[i]t appears that the trial judge on this case, Judge Thomas S. Reese, retired in 2010. On remand, this issue should be addressed pursuant to Florida Rule of Criminal Procedure 3.700(c)(1)."). Accordingly, Day has failed to demonstrate that the circuit court violated his federal due process rights, and, as such, relief on his claim in Ground Two is due to be denied.

## C. Grounds Three and Four

As Ground Three, Day asserts that his resentencing counsel was ineffective for failing to enter into evidence certified copies of his two previous Alabama robbery convictions. Amended Petition at 8. Day contends that the circuit court stated it was concerned about Day's "two previous armed robberies." Id. However, he maintains these were not armed robberies but third-degree, unarmed robberies. Id. According to Day, had counsel submitted certified copies of these two convictions, there is a reasonable probability the circuit court would not have imposed a thirty-year sentence. Id. In Ground Four, Day contends the circuit court violated his due process rights when it based its sentencing determination on Day having previously committed prior armed robberies where the convictions were actually third-degree, unarmed robberies. Id. at 9.

Regarding Ground Three, Respondents assert that the claim is unexhausted. Response at 33-37. Day acknowledges as much in his Amended Petition; however, he asserts he could not exhaust this claim because "[u]nder Florida law, a remedy and/or vehicle doesn't exist for a[n] ineffective assistance of counsel claim on direct appeal." Amended Petition at 8. Respondents note, however, that Day did file a motion for postconviction relief after the direct appeal of his resentencing had concluded that raised several claims of ineffective assistance of counsel, but did not raise this specific claim. Response

at 36-37. Moreover, even if he had raised this in his Second Rule 3.850 Motion, Day did not appeal the denial of that order, thus it would have been unexhausted, nonetheless. <u>Id.</u>

The record reflects that Day did not raise this claim of ineffective assistance of counsel at any point during his state court proceedings. Day's assertion that Florida law prohibited him from raising such a claim on direct appeal is unavailing as Florida provides a procedural mechanism, Rule 3.850, in which a defendant may raise such claims. Indeed, Day attacked the effectiveness of his resentencing counsel in his Second Rule 3.850 Motion but did not raise this claim. Accordingly, the Court finds this claim is unexhausted. Day has failed to demonstrate cause or prejudice to overcome this procedural default and has not alleged a manifest injustice would occur if the Court did not address the merits of this claim. As such, this claim is due to be denied as unexhausted.

Concerning Ground Four, Day raised a similar issue in his Rule 3.800(b)(2) Motion. Resp. Ex. EE at 5-7. In denying the motion, the circuit court stated:

> Being familiar with the case and having reviewed the entire court file and the evidence presented at resentencing proceedings; heard the testimony of witnesses and the argument of counsel; considered applicable rules, statutes, and case law; and having been otherwise fully advised, the Court finds Defendant's arguments unmeritorious and

unpersuasive. Defendant was rightly resentenced by the Honorable Don H. Lester to a legal sentence, which was appropriately based on the evidence, testimony, and record before the Court, as well as applicable Florida law.

Id. at 13-14. The First DCA per curiam affirmed Day's sentence without a written opinion. Resp. Exs. GG; HH.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Day is not entitled to relief on the basis of this claim.

Nevertheless, even if Day properly exhausted the claim in Ground Three and the First DCA's adjudication of the claim in Ground Four was not entitled to deference, Day has failed to demonstrate an entitlement to relief as to these claims. The record reflects that at the resentencing hearing the parties agreed that Day's prior Alabama robbery convictions were third-degree felonies. Resp. Ex. BB at 230. Notably, Day's prior Alabama records were put into evidence at the original sentencing hearing, and they reflect that he was initially charged

with first-degree robbery but pled out to third-degree robbery. Resp. Ex. A at 107-23. During Day's original sentencing hearing, Judge Wilkes initially referred to Day's prior convictions as armed robberies but the attorneys corrected him, stating Day actually pled to unarmed, third-degree robbery charges. Resp. Ex. C at 321-22. The resentencing court specifically noted that it had read the original sentencing transcript, which means the circuit court would have been aware of this variance. Resp. Ex. BB at 246.

Additionally, in resentencing Day, the circuit court made the following comment: "But Judge Wilkes was concerned, as am I, regarding the two previous armed robberies, including the fact that one of them was committed while he was on probation for a previous robbery, which is a very significant and serious concern to me." Id. at 247. Although the resentencing court referenced Day's prior robbery convictions as armed robberies, it would appear, when reading the resentencing court's comments in context, that it was more concerned with the fact that Day committed another robbery while on probation rather than the fact that it was an armed robbery compared to unarmed robbery. As such, the Court finds that Day's claim of prejudice as to the claim in Ground Three is speculative, considering the resentencing court's review of the sentencing transcript that addressed this issue and the context of its statements on the matter. Speculation, however, cannot form the basis of an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Accordingly, Day has failed to demonstrate prejudice. Likewise, as to the claim in Ground Four, Day has failed to establish that the circuit court relied on erroneous information, where the circuit court was more concerned with Day's potential for recidivism than it was with him having been armed during the commission of his prior offenses. Therefore, in light of the above analysis, Day's claims in Grounds Three and Four are due to be denied.

## D. Ground Five

Finally, Day argues that the State withheld exculpatory evidence in violation of his due process rights. Amended Petition at 10. Day asserts that during his trial the State relied on the testimony of Roger Mitchell to convict him. Id. Law enforcement placed a wire on Mitchel in an attempt to get Day to confess to the robbery. Id. However, Day contends that these undercover recordings establish that he did not commit the robbery and knew nothing about it. Id. The State, nonetheless, presented Mitchell's "perjured testimony" that Day committed the robberies. Id. According to Day, the State suppressed the undercover recordings, which Day maintains would have resulted in a not guilty verdict had they been played at trial. Id.

Respondents contend that this claim is both untimely and unexhausted. Response at 43-48. As to the timeliness of this claim, Respondents assert that

the claim was not raised in Day's original, timely Petition and does not otherwise relate back to any of the claims he initially raised. Id. at 43-46. Regarding exhaustion, Respondents aver that Day never raised this claim in state court; thus, depriving the state courts of the ability to first determine the validity of these federal claims. Id. at 46-48. In his Amended Petition, Day asserts he did not exhaust this claim because "[u]nder Florida law, a remedy and/or vehicle doesn't exist for a[n] ineffective assistance of counsel claim on direct appeal." Amended Petition at 10.

Concerning the timeliness of this claim, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). For purposes of section 2244(d)(1)(A), the final judgment means both the conviction *and* sentence. Burton v. Stewart, 549 U.S. 147, 156 (2007). Therefore, if a resentencing occurs, then a new judgment has been entered, which restarts the AEDPA statute of limitations. See Magwood v. Patterson, 561 U.S. 320, 341-42 (2010) (holding that "where . . . there is a 'new judgment intervening between the two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all.") (citations omitted); Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1281 (11th Cir. 2014) (holding that "when a habeas petition is the first to challenge a new judgment [following a resentencing], it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction."); Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1293 (11th Cir.

2007) (holding that habeas petition challenging underlying convictions filed by state prisoner more than five years after he was convicted of crime, but only 57 days after the corrected sentence imposed on resentencing became final, was timely filed). Day's resentencing constituted a new judgment for purposes of section 2244(d)(1). Moreover, section 2244 (d)(1)(A) is the only applicable trigger date here because Day has not alleged an impediment to filing, a new constitutional right, or newly discovered evidence. Amended Petition at 10. Thus, the Court must determine whether this claim was filed within a one-year period from when Day's new judgment became final.

On March 10, 2014, the First DCA per curiam affirmed Day's sentence without a written opinion. Resp. Ex. GG. Because Florida law does not permit the Florida Supreme Court to review an affirmance without an opinion, see Florida Rule of Appellate Procedure 9.030(a)(2), Day's judgment and sentence became final when the time for filing a petition for certiorari in the United States Supreme Court expired, ninety days from when the First DCA entered its opinion. See Chamblee v. Florida, 905 F.3d 1192, 1198 (11th Cir. 2018). Accordingly, on June 9, 2014, the one-year limitations period began to run in this case. Absent the invocation of statutory provisions that extend or toll the limitations period, Day had until June 9, 2015 to file any federal habeas claims.

On June 6, 2014, Day filed a Rule 3.800(c) motion, Resp. Ex. II, which the circuit court denied on June 19, 2014. Resp. Ex. JJ. Day did not appeal. As

such, the statute of limitations was tolled for fourteen days from June 6, 2014 through June 19, 2014. The filing of this motion extended his one-year limitation period to June 23, 2015.

Day filed his initial Petition on June 9, 2015, rendering it timely filed. However, he did not include the claim raised in Ground Five in his original Petition. Instead, Day first raised this claim in his Amended Petition filed in case number 15-cv-882 on July 14, 2015. Therefore, his claim in Ground Five was filed outside of the one-year limitations period and is due to be denied as untimely unless it relates back to the claims raised in his original petition.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 644 (2005). A new claim, however, does not meet the standard and, thus, "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. The terms "conduct, transaction, or occurrence" are not synonymous with "trial, conviction or sentence." Id. at 664.

Here, none of Day's original claims in his Petition dealt with the same conduct, transaction, or occurrence as the claim in Ground Five. In fact, none of his original claims concerned the guilt phase of his trial; instead, each one focused on his resentencing. Thus, the claims in Grounds One through Four differ in both time and type from the claim raised here. Therefore, the claim in Ground Five is due to be denied as untimely.

Turning to exhaustion, the record reflects that Day never raised this issue in state court, a fact Day concedes in his Amended Petition. Amended Petition at 10. Day's assertion that his failure to exhaust this claim is excusable is meritless. He argues Florida law does not permit claims of ineffective assistance on direct appeal but the claim in Ground Five is not an ineffective assistance of counsel claim. Therefore, Day has failed to demonstrate cause or prejudice to excuse this procedural default.

Day asserts in the body of this claim that the State's alleged withholding of these recordings resulted in a miscarriage of justice. Accordingly, the Court will broadly construe this allegation as an attempt to excuse his lack of exhaustion of this claim based on a claim of actual innocence. In reviewing the trial transcripts, the State presented evidence of Mitchell wearing a wiretap on three separate occasions in an attempt to get a recorded confession from Day but each attempt was unsuccessful. Resp. Ex. B at 92, 122-23. Notably, defense counsel specifically cross-examined Mitchell on his failed attempts to

get a recorded confession. Id. at 122-23. In light of this record, Day's claim the State withheld this information is meritless. The jury was made aware of these failed attempts; therefore, playing the recordings would not have changed the outcome of the trial. Moreover, as evidence of the failed undercover recordings was introduced at trial, it cannot support a claim of manifest injustice as to overcome his procedural default. See Calderon, 523 U.S. at 559 ("'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."). As such, Day's claim in Ground Five is due to be dismissed as unexhausted.

Even if this claim were timely and exhausted, Day would not be entitled to relief. Brady v. Maryland, 373 U.S. 83 (1963) governs a state's withholding of exculpatory evidence. To establish a Brady claim, a petitioner must demonstrate: "(1) that the prosecution suppressed evidence (2) that was favorable to the [petitioner] or exculpatory and (3) that the evidence was material." United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir. 1983) (citation omitted). Notably, "[t]he Brady mandate only applies to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence through other means." United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011); see also United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which

they could have ascertained the alleged <u>Brady</u> material, there is no suppression by the government.").

As noted above, the State did not suppress evidence of the surveillance recordings because it presented testimony concerning the unsuccessful attempts to record Day confessing to the crime and defense counsel was aware of such. Therefore, Day cannot satisfy the first element of a <u>Brady</u> violation. Moreover, Day cannot demonstrate this evidence was exculpatory or material, particularly in light of the fact that the jury heard testimony that Day did not confess during these recorded meetings, which would have rendered the actual playing of the recordings cumulative. Additionally, at trial, the State presented evidence that a K-9 unit tracked the suspects scent close to Day's apartment. Resp. Ex. B at 22, 26, 40-42, 46-58, 78. A search of Day's apartment uncovered small black gloves, distinct clothing similar to the ones eyewitnesses described seeing the suspect wear, and dark-colored stocking-type material that matched the description of the mask the suspect wore. <u>Id.</u> at 26-27, 85-87, 133-34, 143-45, 154-55, 157-58, 163-64, 166-67, 174-75, 177-78. Mitchell testified Day told him he was planning a robbery and asked to borrow the same clothing the eyewitnesses described. <u>Id.</u> at 107-08. After the robbery, Day told Mitchell that police did not have any evidence against him for the robbery. <u>Id.</u> at 130-31. The State played the surveillance footage from the scene for the jury, allowing them to compare the physical appearance of the suspect and the clothing with Day

and the clothes recovered from Day's apartment. Id. at 136-37. More importantly, three eyewitnesses who worked at the Food Lion and knew Day, testified that they believed Day was the robber even though the robber's face was hidden based on his voice and physical characteristics. Id. at 139-42, 164-66, 173-74. One of the witnesses knew Day well through her husband, and she testified that Day typically pronounced her name strangely, which was the same way the suspect said her name at the time of the incident. Id. at 173-74. Notably, her name tag did not have her full name on it, but the robber used her full name. Id. Accordingly, in light of the overwhelming evidence of Day's guilt, there is no reasonable probability the outcome of the trial would have been different had these recordings been played for the jury. For all of the foregoing reasons, relief on Day's claim in Ground Five is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Day seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Day "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Day appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of May, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:    Melvin Jerome Day #J13421
      Anne Catherine Conley, Esq.